XUE & ASSOCIATES, P.C.
Benjamin B. Xue, Esq.
Michael S. Romero, Esq.
1 School Street, Suite 303A
Glen Cove, NY 11542
Phone: (516) 595-8887
Fax:    (212) 219-2276
Email: BenjaminXue@XueLaw.Com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

ZI KUO ZHANG, JUN HONG ZHANG, A & A
EXPRESS INC., Z & Z EXPRESS INC., FIVE
STARS REALTY ESTATE INC., SHAN YUN
LIN, and SHIN LUNG ZHENG          Case No.:  1:21-cv-06597

Plaintiffs,

**<u>COMPLAINT</u>**

- against -

YSF HOLDINGS, LLC, WONG REAL ESTATE
CONSULTANCY, LLC, ANTONIO WONG JR., MAN
CHUNG WONG, PATRICK CHAN, and YAN S. FOK

Defendants.

-------------------------------------------------------------X


        Plaintiffs Zi Kuo Zhang ("Z. Zhang"), Jun Hong Zhang ("J. Zhang"), A & A Express Inc.

("A & A Express"), Z & Z Express Inc. ("Z & Z Express"), Five Stars Realty Estate Inc. ("Five

Stars"), Shan Yun Lin ("Lin"), and Shin Lung Zheng ("Zheng") (Collectively "Plaintiffs"), by

their undersigned attorneys, Xue & Associates, P.C., for their Complaint against Defendants

YSF Holdings, LLC ("YSF Holdings"), Wong Real Estate Consultancy, LLC ("Wong

Consultancy"), Antonio Wong Jr. ("A. Wong"), Man Chung Wang ("M. Wong"), Patrick Chan

("Chan"), and Yan S. Fok ("Fok") (collectively "Defendants"), respectfully alleges as follows:

1

## NATURE OF ACTION

1.      Plaintiffs bring this action against Defendants for (1) Violations of 18 U.S.C. §1961 *et seq.*, (2) Fraud, (3) Aiding and Abetting Fraud, (4) Unjust Enrichment, (5) Money had and Received, (6) Constructive Trust, (7) Breach of Fiduciary Duty, and (8) Accounting.

## JURISDICTION AND VENUE

2.      This is a civil action arising under certain provisions of federal law, including without limitation the Racketeer Influenced and Corrupt Organizations Act, and because this action arises under the laws of the United States, this Court has original subject matter jurisdiction under such provisions of law as include without limitation 28 U.S.C. §1331 and supplemental jurisdiction over any and all state law claims forming part of the same case and controversy under such provisions of law as include without limitation 28 U.S.C. §1367.

3.      This Court has personal jurisdiction over all Defendants because all or some Defendants are domiciled in the State of New York, all Defendants transact business within the State of New York, and all Defendants have sufficient minimum contacts with the State of New York.

4.      Venue lies in the Eastern District of New York pursuant to 28 U.S.C. §1391 because all or some Defendants are located in the Eastern District of New York, a substantial part of the events or omissions giving rise to this action occurred in the Eastern District of New York, and this action involves a dispute over the rights, title, and interest to a parcel of real property located in the Eastern District of New York.

2

## PARTIES

5.      Plaintiff Z. Zhang is a natural person residing in New York County, New York.

6.      Plaintiff J. Zhang is a natural person residing in Queens County, New York.

7.      Plaintiff Lin is a natural person residing in Dallas County, Texas.

8.      Plaintiff Zheng a natural person residing in Middlesex County, New Jersey.

9.      Plaintiff A & A Express is a duly formed corporation formed under the laws of the State of New York with its principal place of business located at 35-43 88th Street, 2nd Floor, Jackson Heights, NY 11373. Plaintiffs Z. Zhang and J. Zhang are the owners of A & A Express.

10.     Plaintiff Z & Z is a duly formed corporation formed under the laws of the State of New York with its principal place of business located at 35-43 88th Street, 2nd Floor, Jackson Heights, NY 11373. Plaintiffs Z. Zhang and J. Zhang are the owners of Z & Z Express.

11.     Plaintiff Five Stars is a duly formed corporation formed under the laws of the State of New York with its principal place of business located at 35-43 88th Street, 2nd Floor, Jackson Heights, NY 11373. Plaintiffs Z. Zhang and J. Zhang are the owners of Five Stars.

12.     Upon information and belief, Defendant YSF Holdings is a duly formed limited liability company formed under the laws of the State of New York with a principal place of business located at 4036 77th Street, Elmhurst, NY 11373.

13.     Upon information and belief, Defendant A. Wong is a natural person and a member of YSF Holdings having a last known address of 3544 28th St., 4C, Astoria, NY 11106.

14.     Upon information and belief, Defendant Chan is a natural person having a last known address of 14516 226th Street, Springfield Gardens, NY 11413-3534.

15.     Upon information and belief, Defendant Wong Consultancy is a duly formed limited liability company formed under the laws of the State of New York with a principal place

of business located at 42-11 Kissena Blvd., Flushing, NY 11355. Upon information and belief, Defendant A. Wong is the controlling member of the Wong Consultancy.

16.     Upon information and belief, Defendant Fok is a natural person and a member of YSF Holdings, having a last known address at 5534 84th Street, Elmhurst, NY 11373.

17.     Upon information and belief, Defendant M. Wong is a natural person and member of YSF Holdings, having a last known address at 5 Grove St. 4D, Port Chester, NY 10573.

## RELEVANT FACTS

### a)  A. Wong, Chan, Fok, M. Wong, Wong Consultancy and YSF Holdings' Scheme to Defraud All Plaintiffs

18.     In or around November 2015 Plaintiffs Z. Zhang, J. Zhang, Lin, and Zheng (collectively "Individual Plaintiffs") were solicited by Defendant A. Wong to invest in a new company that he planned on forming, Wong Real Estate Fund I, LLC ("WRE I").

19.     The purported purpose of WRE I was to purchase and develop the property located at 136-46 41st Avenue, Flushing, New York 11354 (the "41st Avenue Property").

20.     In or around November 2015, Individual Plaintiffs met with Defendants A. Wong and Chan (acting as "front men" for them and their associates, Defendants M. Wong, Fok, and YSF Holdings) to discuss plans for construction related to the 41st Ave. Property. (the "Preliminary Meeting").

21.     At the Preliminary Meeting, A. Wong made numerous misrepresentations to Individual Plaintiffs in order to induce them (or their companies) to invest in WRE I. Specifically, A. Wong represented that the purpose of WRE I was to purchase and develop the 41st Avenue Property. A. Wong represented that after purchasing and developing the 41st Avenue

Property, it would be sold at a profit. A. Wong represented that by investing their money into WRE I, Plaintiffs would receive a membership interest in WRE I based upon their investment, and that as members of WRE I, they would be entitled to a share of the profits made when the 41st Avenue Property was "flipped".

22.    Unbeknownst to Plaintiffs at the time, A. Wong and his associates (Chan, M. Wong, Fok, and YSF Holdings) never planned to develop the 41st Avenue Property, or any other property at all. At all relevant times A. Wong and his associates intended on using WRE I and YSF Holdings as part of their scheme to steal Plaintiffs' money.

23.    In or around November 2015, Individual Defendants gathered at a meeting (the "WRE I Meeting") to sign WRE I's operating agreement (the "WRE Agreement"). Defendants A. Wong and Chan were also present at the WRE I Meeting, along with nonparty attorney Jay Lau, of Lau & Associates, P.C.

24.    At the WRE I Meeting, Mr. Lau stated that he represented everyone there, including Individual Plaintiffs and their companies.

25.    At the WRE I Meeting, Mr. Lau instructed Individual Plaintiffs to wire and/or send their money to his attorney trust account.

26.    At the WRE I Meeting, Mr. Lau stated that any of Plaintiffs' money he received would not be disbursed without Plaintiffs' authorization.

27.    At the WRE I Meeting, Plaintiffs Lin and Zheng (collectively "Lin Plaintiffs") signed the WRE I Agreement in their individual capacity. Plaintiff J. Zhang signed the WRE I Agreement on behalf of Five Stars, the company owned by both him and Z. Zhang.

28.    At the WRE I Meeting, Defendant A. Wang signed the WRE I Agreement on behalf of the Wang Consultancy.

29.     On or about November 20, 2015, Lin Plaintiffs each wired and/or sent two hundred fifty thousand dollars ($250,000.00) to Mr. Lau's attorney trust account, which Mr. Lau received on or about November 25, 2015.

30.     In or around late November 2015, Plaintiffs J. Zhang and Z. Zhang, as officers of A & A Express and Z & Z Express, caused A & A Express and Z & Z Express to wire and/or send a total of five hundred thousand dollars ($500,000.00) to Mr. Lau's attorney trust account on behalf of Five Stars, which Mr. Lau received on or about November 24, 2015. (Plaintiffs J. Zhang, Z. Zhang, A & A Express, Z & Z Express, and Five Stars are collectively hereinafter referred to as "Zhang Plaintiffs")

31.     In total, Plaintiffs wired and/or transferred 1 million dollars ($1,000,000.00) to Mr. Lau's attorney trust account in late November 2015 ($250,000 from Plaintiff Lin, $250,000 from Plaintiff Zheng, and $500,000 from Zhang Plaintiffs).

32.     At no point in time did Plaintiffs give any Defendants the authority to authorize Mr. Lau or Lau & Associates to disburse Plaintiffs' funds.

33.     Sometime after Plaintiffs transferred their funds to Mr. Lau's attorney trust account, A. Wong and his associates enacted their scheme to steal Plaintiffs' funds.

34.     In or around early December 2015, A. Wong approached Plaintiffs Z. Zhang and J. Zhang seeking to use Zhang Plaintiffs' $500,000 that they had sent to Mr. Lau's attorney trust account for a purpose other than what was originally agreed on. While WRE I was originally meant to purchase and develop the 41st Avenue Property, A. Wong instead proposed to Plaintiffs Z. Zhang and J. Zhang that their funds would instead be used for WRE I to purchase and develop property located at 40-36 77th Street, Elmhurst, New York 11373. (the "77th Street Property"). A. Wong made similar misrepresentations to Z. Zhang and J. Zhang about how their money would

be used for WRE I to purchase the 77th Street Property, and how they would ultimately make a profit through WRE I's purchase of the 77th Street Property. Z. Zhang and J. Zhang agreed that their money could be used for WRE I to purchase and develop the 77th Street Property, but only on the express condition that they receive a security interest in the hotel that was located on the 77th Street Property as collateral.

35.    In or around December 2015, at the request of Defendant A. Wong, Plaintiff J. Zhang sent Mr. Lau a text message which stated "Hi Jay this is Jun hong zhang please release the money we have in the escrow to close the property located at 40-36 77th street. Hotel will be additional collateral for 41st ave."

36.    Unlike Zhang Plaintiffs, Defendant A. Wong never approached Lin Plaintiffs regarding the 77th Street Property. Instead, upon information and belief, sometime after Plaintiffs transferred their funds to Mr. Lau's trust account A. Wong, or his agents, sent Mr. Lau a fraudulent text message impersonating Plaintiff Zheng. (The "Fraudulent Text Message"). Upon information and belief, this Fraudulent Text Message read: "Jay, I am shin lung zheng, I spoke to the other shareholders, I am in China now, please release the money we have in escrow to close the property located at 40-36 77th street." Plaintiff Zheng did not send the Fraudulent Text Message.

37.    Further, on or about December 18, 2015, in furtherance of the fraud against Plaintiffs, Defendants A. Wong and Chan executed a fraudulent authorization purportedly authorizing Mr. Lau to release Plaintiffs' funds held in his attorney trust account. This fraudulent authorization was only signed by Defendants A. Wong and Chan, and fraudulently stated that they were "all the Directors and Shareholders of WRE I". Furthermore, Defendant Chan signed

as a "shareholder" of WRE I, despite the fact that there WRE I is an LLC and had no shares, and in any event, was not even a member of WRE I.

38.     As a result of the fraudulent actions of Wong and his associates (Chan, M. Wong, Wong Consultancy, YSF Holdings, and Fok), and the grossly negligent actions of Mr. Lau and his law firm[1], on or about December 21, 2015, Plaintiffs' funds were released from Mr. Lau's attorney trust account and used to purchase the 77th Street Property – but not for the benefit of WRE I or for Plaintiffs.

39.     Despite the transfer of Plaintiffs' funds, neither WRE I nor Plaintiffs are the title holders of either the 41st Avenue Property or the 77th Street Property.

40.     Instead, the title of the 77th Street Property currently rests with YSF Holdings. Jay Lau and Lau & Associates, P.C. appear as attorneys for YSF Holdings in the purchase of the 77th Street Property.

41.     Upon information and belief, YSF Holdings purchased the 77th Street Property on or about December 21, 2015, for a purchase price of one million nine-hundred-thousand dollars ($1,900,000.00).

42.     Upon information and belief, YSF Holdings procured a nine-hundred-thousand-dollar ($900,0000.00) loan in order to purchase the 77th Street Property. Upon information and belief, YSF Holdings had insufficient funds on or about December 21, 2015, to pay the remaining 1 million dollars ($1,000,000.00) necessary to purchase the 77th Street Property.

---

[1] It is Plaintiffs' contention that Mr. Lau and Lau & Associates, P.C.'s act of transferring Plaintiffs funds 1) on the basis of the Fraudulent Text Message (as to Lin Plaintiffs) and 2) without obtaining a security interest as explicitly instructed (as to Zhang Plaintiffs) was grossly negligent and constitute professional malpractice, or in the alternative, constitute a breach of fiduciary duty. These claims have been brought in a separate action against Mr. Lau and Lau & Associates and will not be addressed herein.

43.     Upon information and belief, on or about December 21, 2015, some or all of Plaintiffs funds that were being held in Jay Lau's trust account were released to YSF Holdings in order for YSF Holdings to purchase the 77th Street Property.

44.     Upon information and belief, Fok was the managing member of YSF Holdings. Upon information and belief, Defendant A. Wong is or was the member with a majority ownership interest in YSF Holdings. Upon information and belief M. Wong is a member of YSF Holdings. Upon information and belief, Fok, M. Wong, and YSF Holdings were aware of A. Wong's scheme to defraud Plaintiffs and were active participants in perpetrating the fraud.

45.     Upon information and belief, YSF Holdings utilized Plaintiffs' funds to purchase the 77th Street Property. Upon information and belief, in furtherance of their fraud against Plaintiffs, A. Wong, M. Wong, Chan and Fok utilized YSF Holdings as means to steal Plaintiffs' funds. Upon information and belief, portions of Plaintiffs funds which were not utilized by YSF Holdings to purchase the 77th Street Property improperly went directly to Defendants themselves. Plaintiffs first discovered that their above referenced funds were stolen by A. Wong and YSF Holdings in or around the middle of 2019.

46.     As a result of Defendants fraudulent actions, Plaintiffs have lost the above referenced $1 million. Plaintiffs have not received an ownership interest in the 41st Avenue Property, the 77th Street Property, or in YSF Holdings as a result of their $1 million being released to YSF Holdings to purchase the 77th Street Property.[2] Further, Zhang Plaintiffs never received a security interest in the hotel on the 77th Street Property as was specifically directed.

---

[2] As set forth in greater detail below, Plaintiff J. Zhang has a 10% membership interest in YSF Holdings. However, Zhang Plaintiffs' $500,000 released from Mr. Lau's attorney trust account to YSF Holdings was done without Plaintiff J. Zhang's knowledge and did not confer J. Zhang with a greater interest in YSF Holdings or the 77th Street Property than he already had. In other words, J. Zhang received no benefit for the release of Zhang Plaintiffs' funds to YSF.

**b)  A. Wong, M. Wong,  Fok, and YSF Holdings' Scheme to Defraud Plaintiff J. Zhang**

47.    In or around November 2015, Plaintiff J. Zhang was separately solicited by A. Wong to invest in another company, Defendant YSF Holdings.

48.    A. Wong (acting as a "front man" for himself and his associates, M. Wong, Fok, and YSF Holdings) made numerous misrepresentations to J. Zhang in order to induce him into investing in YSF Holdings. Specifically, A. Wong represented that the purpose of YSF Holdings was to purchase and develop the 77th Street Property. A. Wong represented that J. Zhang's money would be used to purchase and develop the 77th Street Property as a hotel, and that J. Zhang would receive a membership interest in YSF Holdings as a result of his investment.

49.    On or about November 16, 2015, Plaintiff J. Zhang entered into a stock purchase agreement with Defendant YSF Holdings to purchase "20 shares of capital stock at $12,500.00 par value common stock" from YSF Holdings. The YSF Stock Purchase Agreement was signed by "Manhai Wong" as "Director for YSF Holdings LLC". Upon information and belief, Manhai Wong is an alias of Defendant M. Wong.

50.    In or around November 2015, in furtherance of the YSF Stock Purchase agreement, Plaintiff J. Zhang paid $250,000.00 to YSF Holdings.

51.    On or about December 1, 2015, J. Zhang entered into an operating agreement for YSF Holdings as a member (the "Zhang YSF Holdings Operating Agreement"). The Zhang YSF Holdings Operating Agreement was signed by J. Zhang, Fok, and A. Wong as members of YSF Holdings. According to the Zhang YSF Holdings Operating Agreement, A. Wong had a 50% ownership interest in YSF Holdings, Fok had a 40% ownership interest in YSF Holdings, and J. Zhang had a 10% ownership interest in YSF Holdings.

52.     Unbeknownst to J. Zhang at the time, upon information and belief, on or about December 1, 2015, a separate YSF Holdings operating agreement was executed (the "Fok-Wong YSF Holdings Operating Agreement"). The Fok-Wong YSF Holdings Operating Agreement was signed by Fok and M. Wong as members of YSF Holdings. According to the Fok-Wong YSF Holdings Operating Agreement, Fok had a 50% ownership interest in YSF Holdings, and M. Wong had a 50% ownership interest in YSF Holdings.

53.     Unbeknownst to J. Zhang at the time, upon information and belief, on or about December 21, 2015, Fok and M. Wong entered into a Pledge of Interests Agreement, whereby Fok and M. Wong agreed to provide a security interest in their ownership interests in YSF Holdings in order to secure the $900,000.00 Loan YSF Holdings used to purchase the 77th Street Property. According to the Pledge of Interests Agreement, Fok and M. Wong warranted that they owned "100% of the distributions, gains profits and losses of [YSF Holdings]".

54.     On or about December 21, 2015, YSF Holdings purchased the 77th Street Property as set forth above. However, as set forth above, the 77th Street Property was purchased using Plaintiffs funds held in Jay Lau's escrow account, **not** J. Zhang's $250,000 invested into YSF Holdings for the express purpose of purchasing the 77th Street Property.

55.     On or about December 23, 2015, YSF Holdings issued a stock certificate issuing 20 shares to Fivestars, in furtherance of the YSF Stock Purchase Agreement.

56.     Unbeknownst to J. Zhang at the time, upon information and belief, on or about January 25, 2016, a third YSF Holdings Operating Agreement was executed (the "Fok YSF Holdings Operating Agreement"). This time, Fok signed as the only purported member of YSF Holdings.

57. Further, unbeknownst to J. Zhang at the time, upon information and belief, on or about June 30th, 2017, YSF Holdings passed a resolution authorizing the sale of 100% of the membership, capital, and profits interest in YSF Holdings to M. Wong.

58. Upon information and belief, since YSF Holdings' purchase of the 77th Street Property, YSF Holdings has been receiving payments from the occupants of the hotel on the 77th Street Property. Upon information and belief, these payments have been distributed to Fok and M. Wong.

59. Despite the Zhang YSF Holdings Operating Agreement indicating that J. Zhang is a member of YSF Holdings, Defendants YSF Holdings, A. Wong, M. Wong, and Fok have acted as though J. Zhang has no membership interest in YSF Holdings at all.

### c) **Defendants' other victims**

60. In addition to the unlawful acts by Defendants against Plaintiffs, including but not limited to those alleged in the instant Complaint, the Defendants have practiced other and similar unlawful acts against other persons and parties, hereinafter referred to as the "Other Aggrieved Parties")[3], including but not limited to the following.

61. According to a verified complaint by Great Wall Realty Corp., Defendant A. Wong and others committed fraud by, inter alia, obtaining loans secured by properties not owned by Defendant A. Wong by fraudulently prepared documents. True and accurate copies of the verified complaint and verified third-party complaint are annexed hereto and made part hereof as EXHIBIT A. Said action resulted in Defendant A. Wong giving a Confession of Judgment for

---

[3] Nothing alleged or incorporated herein shall be construed as an admission by Plaintiffs regarding any priority of claim by any Other Aggrieved Party to any money or property, including without limitation the Properties mentioned herein.

the sum of $5,000,000.00 dollars. A true and accurate copy of Wong's Affidavit of Confession of Judgment and Judgment by Confession is annexed hereto and made part hereof as EXHIBIT B, the provisions of which are hereby incorporated by reference.

62.    According to a verified complaint, Defendant A. Wong, the Wong Consultancy, and others, including A. Wong's associate Jimmy Li, committed fraud, deceptive trade practices, and other tortious and unlawful acts against Xiao Dong Chen and Yan Jie Huang, including but not limited to holding themselves out to be real estate investors, taking Chen and Huang's money on the pretext of assisting them in investing in real estate, and then unlawfully taking the plaintiffs' money and refusing to return same. The plaintiffs also allege that the defendants' attorneys unlawfully released plaintiffs' money directly to defendants without authorization. A true and accurate copy of the summons and verified complaint is annexed hereto and made part hereof as EXHIBIT C, the allegations of which are hereby incorporated by reference.

63.    According to a sworn declaration by James Choi, submitted to the Court in connection with his own action against A. Wong and Fok, A. Wong, and others, including Fok, committed fraud and other tortious and unlawful acts against him and 165 Gregory Road Associates, LLC, including without limitation, converting $500,000.00 as the result of a scheme to defraud the plaintiffs in that action including but not limited to by to holding themselves out to be real estate investors, taking the plaintiffs' money on the pretext of assisting them in investing in real estate, and then unlawfully taking the plaintiff's money and refusing to return same. The plaintiffs also allege that the defendants' attorneys unlawfully released plaintiffs' money directly to defendants without authorization. A true and accurate copy of the declaration of Choi, dated October 15, 2020, is annexed hereto and made part hereof as EXHIBIT D, the allegations of which are hereby incorporated by reference

64.      According to a verified complaint, Defendants A. Wong and the Wong Consultancy, Manhai Wong (believed to be Defendant M. Wong) and a "Sissy Yan Fok," (believed to be Defendant Fok), converted $1,500,000.00 as the result of a scheme to defraud the plaintiffs in that action including but not limited to by to holding themselves out to be real estate investors, taking the plaintiffs' money on the pretext of assisting them in investing in real estate, and then unlawfully taking the plaintiff's money and refusing to return same. A true and accurate copy of the verified complaint is annexed hereto and made part hereof as EXHIBIT E, the allegations of which are hereby incorporated by reference.

**FIRST CAUSE OF ACTION**
**(18 U.S.C. §1961 *et seq.* Racketeer Influenced and Corrupt Organizations Act as to All Defendants by All Plaintiffs)**

65.      Plaintiffs reallege and incorporate by reference each and every allegation set forth above, as though fully set forth herein.

a)  **Factual allegations common to all RICO Counts:**

66.      Upon information and belief, for all relevant periods, Defendant A. Wong was acting as the agent of each and all his co-Defendants and as the "front man" of their association as part of an enterprise existing for the purpose of committing such racketeering and fraudulent actions against numerous victims, including but not limited to the Plaintiffs, as described herein and in the sworn statements made by others of such Defendants' victims.

67.      Plaintiffs discovered that their funds were stolen by A. Wong and his associates in or around October 2018.

68.      Defendants' RICO violations affected interstate commerce and were effected by the use of the mails, wires, and/or other instrumentalities of interstate commerce.

**b)  Plaintiffs' Standing Under RICO:**

69.      Plaintiffs are persons within the meaning of 18 U.S.C. §§1961(3) and 1962.

70.      Plaintiffs have sustained an injury to their business or property by the conduct constituting Defendants' RICO violations as alleged and demonstrated throughout this Complaint.

71.      The Defendants' RICO violations did in fact cause Plaintiffs' injuries as the direct, intended result of the Defendants' scheme to defraud the Plaintiffs as alleged and demonstrated throughout this Complaint.

72.      The Defendants' RICO violation proximately caused Plaintiffs' injuries as the direct, intended result of the Defendants' scheme to defraud the Plaintiffs as alleged and demonstrated throughout this Complaint.

**c)  Culpable Persons:**

73.      Defendant A. Wong as natural person is a person within the meaning of 18 U.S.C. §1961(3).

74.       Defendant M. Wong as natural person is a person within the meaning of 18 U.S.C. §1961(3).

75.      Defendant Chan as natural person is a person within the meaning of 18 U.S.C. §1961(3).

76.    Defendant Fok as natural person is a person within the meaning of 18 U.S.C. §1961(3).

77.    Defendant Wong Consultancy as a limited liability company is a person within the meaning of 18 U.S.C. §1961(3).

78.    Defendant YSF Holdings as a limited liability company is a person within the meaning of 18 U.S.C. §1961(3).

### d) **Scienter:**

79.    The Defendants intended to obtain Plaintiffs' property by means of materially false or fraudulent pretenses or representations.

80.    The Defendants' intent is evidenced by such examples as include without limitation, making the materially false representations to Plaintiffs as described above, and practicing similar schemes on the Other Aggrieved Parties.

81.    YSF Holdings intended to obtain Plaintiffs' property by means of materially false or fraudulent pretenses or representations.

82.    YSF Holdings' intent is evidenced by such examples as include without limitation its wrongfully taking Plaintiffs' funds without permission or authority to purchase the 77th Street Property and concealment of its malfeasance from Plaintiffs.

### e) **Racketeering Activity – 18 U.S.C. §1343, and 18 U.S.C. §1344:**

83.    The Defendants conspired and participated in the commission of one or more racketeering activities within the definition of 18 U.S.C. §1961(1), including without limitation wire fraud, and financial institution fraud.

84.     Specifically, Defendant A. Wong and the Wong Consultancy, on behalf of himself and the other Defendants, committed mail, wire, and/or financial institution fraud by using instrumentalities of interstate commerce to fraudulently induce the release of Plaintiffs' money from the custody of one or more financial institutions by Mr. Lau and Lau and Associates, P.C. so that Defendants could obtain Plaintiffs' money by false and fraudulent pretenses, representations, and promises.

85.     The Defendants then used Plaintiffs' money to enrich themselves and their enterprise by using it to purchase the 77th Street Property in the name of YSF Holdings, of which Defendants Fok, A. Wong, and M. Wong are or were members.

86.     Based on the foregoing, the Defendants devised and/or intended to devise one or more schemes or artifices to defraud Plaintiffs and others.

87.     Based on the foregoing, the Defendants devised and/or intended to devise one or more schemes or artifices for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

88.     Based on the foregoing, the Defendants did or could have reasonably foreseen the use of the mails in furtherance of their schemes or artifices to defraud Plaintiffs.

89.     Based on the foregoing, the Defendants transmitted or caused to be transmitted by means of wire, radio, and/or television communication in interstate or foreign commerce, writings, signs, signals, pictures, and/or sounds for the purpose of executing such scheme or artifice.

90.     Based on the foregoing, the Defendants knowingly executed or attempted to execute a scheme or artifice to obtain Plaintiffs' property under the custody or control of a financial institution by means of false or fraudulent pretenses, representations, or promises.

f)  **Pattern of Racketeering:**

91.    The Defendants committed not less than two acts of racketeering activity, one or more of which occurred within ten years after the commission of a prior act of racketeering.

92.    Defendant A. Wong committed the predicate acts of racketeering activity as alleged in detail above.

93.    Next, as reported in a sworn statement, See Exhibit A, Defendant A. Wong committed two acts of racketeering, in addition to the acts of racketeering he perpetrated against Plaintiffs as alleged herein, by committing financial institution fraud against Other Aggrieved Parties by falsely obtaining millions of dollars from the custody and control of financial institutions, including without limitation $1,100,000.00 from Wisdom Ventures LLC and Bloomingdale Drive Funding Co. on or about July 26, 2012 and $2,500,000.00 from Quontic Bank on or about January 9, 2013.

94.    In addition, as reported in a sworn statement, See Exhibit C, Defendant A. Wong, Wong Consultancy, and others including Jimmy Li, committed several acts of racketeering against Other Aggrieved Parties in the form of mail and/or wire fraud by, inter alia, mailing bad checks in furtherance of a Ponzi scheme on May 25, 2016, and August 15, 2016, emailing a loan application in furtherance of a Ponzi scheme and a promissory note in furtherance of a Ponzi scheme on February 16, 2016.

95.    Still further, as reported in a sworn statement, See Exhibit E, Defendants A. Wong, Wong Consultancy, Fok, and M. Wong committed several acts of racketeering against Other Aggrieved Parties in the form of mail fraud, wire fraud and/or financial institution fraud by, inter alia, persuading Other Aggrieved Parties to wire $1,500,000.00 to an attorney escrow account as an investment in a purported real estate project and then subsequently inducing the

18

attorneys to release the funds to themselves and others without authorization by the aggrieved parties and absconding with their money in a scheme beginning in September 2014 through June 2016.

96.     Yet again, as reported in a sworn statement, See Exhibit D, Defendants A. Wong, Wong Consultanacy and Fok committed several acts of racketeering against Other Aggrieved Parties in the form of mail fraud, wire fraud and/or financial institutions fraud by, inter alia, persuading Other Aggrieved Parties to wire $500,000 to an attorney escrow account as an investment in a purported real estate project and then subsequently inducing the attorneys to release the funds to themselves and others without authorization by the aggrieved parties and absconding with their money in a scheme in or around November 2015.

97.     The Defendants' pattern of racketeering constitutes a continuous and related series of acts forming a closed-ended scheme against the instant Plaintiffs, by unlawfully obtaining the Plaintiffs' monies and using it for their own gain as part of their larger, open-ended scheme to defraud a continual parade of victims of schemes similar to the ones perpetrated on the instant Plaintiffs and the plaintiffs in the above-cited cases. Further, the Defendants continue to hold, invest, and otherwise make use of Plaintiffs' money as part of their ongoing enterprise and scheme and continuously harm Plaintiff as part of an ongoing enterprise.

g) **RICO Enterprise:**

98.     The Defendants constitute a group associated in fact and involved in interstate commerce.

99.     The Defendants' group functions to fulfill the purpose of, inter alia, deceiving innocent investors, including without limitation Plaintiffs and the Other Aggrieved Parties, into

believing that they are bona fide, successful real estate developers; persuading said investors to wire their money for the purpose of purchasing real property to an attorney escrow account; inducing the escrow agent by fraud, or perhaps nefarious cooperation, to release the escrowed money to the Defendants, whereupon they disappear and abscond with their victims' money.

100.    The Defendants have various relationships among those associated with the enterprise, including without limitation that of limited liability company and members, as between YSF Holdings, M. Wong, A. Wong and Fok; and repeat coconspirators, such as A. Wong, Jimmy Li, M. Wong and Fok. The Defendants also have various relationships specific to the racketeering enterprise they comprise. For example, A. Wong and Jimmy Li appear to regularly act as the "front men" who find and solicit the victims, the Wong Consultancy poses as a large-scale developer,, and various single-purpose entities, such as YSF Holdings, function as the purported investment vehicle.

101.    This association in fact has gone on for years, swindling victim after victim, demonstrating a longevity sufficient to permit those associates to pursue the enterprise's purpose, as described above.

### Count One - §1962(a)

102.    The Defendants as an ongoing enterprise received the income of the funds taken from Plaintiffs and other victims in acts of racketeering as described above and invested said income into real property, ostensibly owned in a partnership with their victims but in reality purchased by a different entity to the direct injury to the victims, including Plaintiffs.

103.    As part of the ongoing enterprise, the Defendants use said real property for their profit, in the instant case, apparently by taking income from the hotel operation situated at the 77th Street Property.

20

104.   The Defendants received income in the form of Plaintiffs' money from the above-described racketeering activity.

105.   The Defendants used and invested such income in the establishment or operation of an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

106.   The Defendants' engagement in and effect on interstate commerce includes without limitation their use of the mails, electronic mail, and bank wires in furtherance of their racketeering activity.

107.   Plaintiffs were injured by the investment of racketeering income including without limitation by the Defendants' taking Plaintiffs' money and any additional income derived therefrom and belonging to Plaintiffs and placing it in one or more real property investments beyond the reach of Plaintiff but for the intervention of this Court.

108.   The Defendants accomplished the foregoing by the use of one or more racketeering activities within the meaning of 18 U.S.C. §1961(1) as described herein.

109.   The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5) as described herein.

110.   As direct and proximate result of the Count I Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiffs have been injured in their business and property including without limitation in that they have lost their $1,250,000.00 delivered to Defendants, the profits promised them by Defendants, their interest in the 41st Avenue Property/77th Street Property, and attorneys' fees and costs.

111.   Wherefore, Plaintiffs request that this Court enter judgment against the Defendants as follows: actual damages in an amount to be determined at trial but in any event

not less than $1,250,000.00, treble damages, attorney's fees, and whatever other relief the Court may find just and proper.

## Count Two - §1962(b)

112.    Plaintiffs were injured by Defendants' acquisition of an interest or control over an enterprise.

113.    The Defendants' engagement in and effect on interstate commerce includes without limitation their use of the mails, electronic mail, and bank wires in furtherance of their racketeering activity.

114.    The Defendants acquired and maintained interests in and control of the enterprise through a pattern of racketeering activity.

115.    Specifically, Defendants unlawfully took Plaintiffs' funds by fraudulently inducing the release of those funds from financial institutions to entities owned by Defendants that were outside of Plaintiffs' control. Defendants then used those unlawfully obtained funds to purchase properties in the name of an entity of which Plaintiffs were not members (or in the case of Plaintiff J. Zhang, where he was a minority member who had no control over the entity). Defendants' practiced variations of this scheme upon other victims. Defendants thereafter invested the proceeds of their racketeering offenses against their victims and used said proceeds to acquire, maintain, and grow an enterprise engaged in racketeering.

116.    The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5) as described herein.

117.    The Defendants have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

118.    As direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiffs have been injured in their business and property including without limitation in that they have lost their $1,250,000.00 delivered to Defendants, the profits promised them by Defendants, their interest in the 41st Avenue Property/77th Street Property, and attorneys' fees and costs.

119.    Wherefore, Plaintiffs request that this Court enter judgment against the Defendants as follows: actual damages in an amount to be determined at trial but in any event not less than $1,250,000.00, treble damages, attorney's fees, and whatever other relief the Court may find just and proper.

## Count Three - §1962(c)

120.    The Defendants as an association in fact comprise an enterprise engaged in and whose activities affect interstate commerce, including but limited to by use of the mails, electronic mails, and bank wires to fraudulently obtain the property of other and invest their victims' property in the enterprise by accumulating real property, stealing money and engaging is similar schemes.

121.    The Defendants are employed by or associated with the enterprise.

122.    The Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs.

123.    Specifically, Defendants unlawfully took Plaintiffs' funds by fraudulently inducing the release of those funds from financial institutions to entities owned by Defendants that were outside of Plaintiffs' control. Defendants then used those unlawfully obtained funds to purchase properties in the name of an entity of which Plaintiffs were not members (or in the case of Plaintiff J. Zhang, where he was a minority member who had no control over the entity). Defendants' practiced variations of this scheme upon other victims. Defendants thereafter invested the proceeds of their racketeering offenses against their victims and used said proceeds to acquire, maintain, and grow an enterprise engaged in racketeering.

124.    Pursuant to and in furtherance of their fraudulent scheme, The Defendants committed multiple related acts of racketeering as described above.

125.    The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5) as described herein.

126.    The Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c) as described above.

127.    As direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property including without limitation in that they have lost their $1,250,000.00 delivered to Defendants, the profits promised them by Defendants, their interest in the 41st Avenue Property/77th Street Property, and attorneys' fees and costs.

128.    Wherefore, Plaintiffs request that this Court enter judgment against the Defendants as follows: actual damages in an amount to be determined at trial but in any event

not less than $1,250,000.00, treble damages, attorney's fees, and whatever other relief the Court may find just and proper.

## Count Four - §1962(d)

129.    As set forth above, the Defendants agreed and conspired to violate 18 U.S.C. § 1962(a) (b) and (c).

130.    Specifically, Defendants unlawfully took Plaintiffs' funds by fraudulently inducing the release of those funds from financial institutions to entities owned by Defendants that were outside of Plaintiffs' control. Defendants then used those unlawfully obtained funds to purchase properties in the name of an entity of which Plaintiffs were not members (or in the case of Plaintiff J. Zhang, where he was a minority member who had no control over the entity). Defendants' practiced variations of this scheme upon other victims. Defendants thereafter invested the proceeds of their racketeering offenses against their victims and used said proceeds to acquire, maintain, and grow an enterprise engaged in racketeering.

131.    Plaintiffs were injured by an overt predicate act of racketeering in furtherance of the conspiracy.

132.    This conspiracy is evidenced by the concerted actions taken by the Defendants and was intended to and did (1) use or invest income that was derived from a pattern of racketeering activity in an interstate enterprise (§ 1962(a)); (2) acquire or maintain interests in the enterprise through a pattern of racketeering activity (§ 1962(b)); and (3) conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity (§ 1962(c)).

133.    The Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as described herein.

134.    The Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.

135.    Said conduct constitutes a conspiracy to violate 18 U.S.C.A. § 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d).

136.    As direct and proximate result of the Count IV Defendant(s)' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property including without limitation in that they have lost their $1,250,000.00 delivered to Defendants, the profits promised them by Defendants, their interest in the 41st Avenue Property/77th Street Property, and attorneys' fees and costs.

137.    Wherefore, Plaintiffs request that this Court enter judgment against the Defendants as follows: actual damages in an amount to be determined at trial but in any event not less than $1,250,000.00, treble damages, attorney's fees, and whatever other relief the Court may find just and proper.

## SECOND CAUSE OF ACTION
### (Fraud against A. Wong and the Wong Consultancy by All Plaintiffs)

138.    Plaintiffs reallege and incorporate by reference each and every allegation set forth above, as though fully set forth herein.

139.    As set forth above, A. Wong, on behalf of himself and the Wong Consultancy, made numerous misrepresentations to Plaintiffs in an attempt to induce them into investing into WRE I. Specifically, A. Wong represented that the purpose of WRE I was to purchase and develop the 41st Avenue Property. A. Wong represented that after purchasing and developing the 41st Avenue Property, it would be sold at a profit. A. Wong represented that by investing their money into WRE I, Plaintiffs would receive a membership interest in WRE I based upon their investment, and that as members of WRE I, they would be entitled to a share of the profits made when the 41st Avenue Property was "flipped".

140.    A. Wong's representations were false, since as set forth above, A. Wong and his associates never intended to purchase and develop the 41st Avenue Property. Instead, A. Wong, with the aid of his associates, Chan, M. Wong, Fok, and YSF Holdings, intended on using Plaintiffs' money to purchase the 77th Street Property for YSF and to steal the remainder of Plaintiffs funds for himself. A. Wong's representations were clearly made to deceive Plaintiffs, as Plaintiffs would never have transferred their money to Mr. Lau's attorney trust account had A. Wong's true intentions been made clear at the outset.

141.    Relying on A. Wong's fraudulent representations, Plaintiffs transferred their money to Mr. Lau's attorney trust account. Plaintiffs reasonably relied on A. Wong's misrepresentations. But for A. Wong's fraudulent representations, Plaintiffs would **not** have transferred their money to Mr. Lau's attorney trust account.

142.    Plaintiffs were clearly harmed by A. Wong's misrepresentations, because as set forth above, Plaintiffs funds were used by YSF Holdings to purchase the 77th Street Property, and Plaintiffs did not receive any ownership interest in YSF Holdings or in the 77th Street Property in exchange for their money being used.

143.    Wherefore, Plaintiffs request that this Court enter judgment against Defendant A. Wong as follows: actual damages in an amount to be determined at trial but in any event not less than $1,000,000.00, punitive damages in an amount to be determined at trial, and attorney's fees, and whatever other relief the Court may find just and proper.


## THIRD CAUSE OF ACTION

### (Aiding and Abetting Fraud against Chan, M. Wong, Fok, and YSF Holdings by All Plaintiffs)

144.    Plaintiffs reallege and incorporate by reference each and every allegation set forth above, as though fully set forth herein.

145.    As set forth above, an underlying fraud perpetrated by Defendant A. Wong exists.

146.    Defendant Chan substantially assisted the fraud by executing the Fraudulent Authorization, whereby Defendant Chan fraudulently represents that he is the shareholder and secretary of WRE I. By executing the Fraudulent Authorization, Chan assisted in attempting to create the appearance of legitimacy to a fraudulent authorization to release Plaintiffs funds.

147.     Defendant Chan's actual knowledge of the fraud is evidenced by the fact that he is neither a shareholder nor the secretary of WRE I, and there is no basis for executing the Fraudulent Authorization absent his knowledge of the underlying fraud itself.

148.    Defendant YSF Holdings substantially assisted the fraud by accepting and using funds rightfully belonging to Plaintiffs to purchase the 77th Street Property. M. Wong and Fok

assisted in the underlying fraud by permitting YSF Holdings to accept and use the funds rightfully belonging to Plaintiffs to purchase the 77th Street Property.

149.    YSF Holdings, M. Wong and Fok's actual knowledge of the fraud is evidenced by the fact that they knew YSF Holdings had inadequate funds to purchase the 77th Street Property and knew that the funds used to purchase the 77th Street Property did not belong to them. Further, M. Wong and Fok attempted to distance themselves from A. Wong by executing legal documents stating they were YSF Holdings' only members without mentioning A. Wong's involvement with YSF Holdings.

150.    But for Chan, Fok, M. Wong, and YSF Holdings' aiding and abetting the fraud perpetrated by A. Wong (and the gross negligence of Jay Lau and Lau & Associates) Plaintiffs funds would not have been released from Jay Lau's attorney trust account to YSF Holdings.

151.    Wherefore, Plaintiffs request that this Court enter judgment against Defendants YSF Holdings, M. Wong, Fok, and Chan as follows: actual damages in an amount to be determined at trial but in any event not less than $1,000,000.00, punitive damages in an amount to be determined at trial, and attorney's fees, and whatever other relief the Court may find just and proper.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment against YSF Holdings by All Plaintiffs)

152.    Plaintiffs reallege and incorporate by reference each and every allegation set forth above, as though fully set forth herein.

153.    As set forth above, on or about December 21, 2015, YSF Holdings purchased the 77th Street Property using some or all of Plaintiffs' funds.

154.    Upon information and belief, YSF Holdings benefited at the expense of Plaintiffs by using money rightfully belonging to Plaintiffs to purchase the 77th Street Property.

155.    Equity and good conscience require restitution.

156.    Wherefore, Plaintiffs request that this Court enter judgment against Defendant YSF Holdings as follows: actual damages in an amount to be determined at trial but in any event not less than $1,000,000.00, interest from December 21, 2015, and whatever other relief the Court may find just and proper.

**FIFTH CAUSE OF ACTION**

**(Money Had and Received against YSF Holdings by All Plaintiffs)**

157.    Plaintiffs reallege and incorporate by reference each and every allegation set forth above, as though fully set forth herein.

158.    As set forth above, on or about December 21, 2015, Plaintiffs' money held in Mr. Lau and Lau and Associates attorney trust account was released to YSF Holdings.

159.    YSF Holdings benefitted from the receipt of Plaintiffs' money by using those funds to purchase the 77th Street Property.

160.    Under the principles of equity and good conscious, YSF Holdings should not be permitted to keep Plaintiffs' money.

161.    Wherefore, Plaintiffs request that this Court enter judgment against Defendant YSF Holdings as follows: actual damages in an amount to be determined at trial but in any event not less than $1,000,000.00, interest from December 21, 2015, and whatever other relief the Court may find just and proper.

## SIXTH CAUSE OF ACTION

## (Constructive Trust as to Defendants A. Wong, the Wong Consultancy and YSF Holdings by All Plaintiffs)

162.    Plaintiffs reallege and incorporate by reference each and every allegation set forth above as though fully set forth herein.

163.    As the majority member of WRE I , Defendants A. Wong and the Wong Consultancy owed Plaintiffs the fiduciary duties of loyalty and care.

164.    As set forth above, A. Wong promised Plaintiffs that their funds would be used to purchase and develop the 41st Avenue Property.

165.    In reliance on that promise, Plaintiffs transferred their funds to Mr. Lau's attorney trust account.

166.    As set forth above, A. Wong promised Zhang Plaintiffs that if they agreed to use their funds to instead purchase and develop the 77th Street Property, Zhang Plaintiffs would receive a security interest in the hotel located on the 77th Street Property.

167.    In reliance on that promise, Zhang Plaintiffs authorized Mr. Lau to transfer their funds to purchase the 77th Street Property on behalf of WRE I, on the condition that they receive such a security interest.

168.    Rather than fulfill those promises, A. Wong fraudulently directed Mr. Lau to release Plaintiffs' funds to purchase the 77th Street Property on behalf of YSF Holdings, another company in which A. Wong is or was a majority member.

169.    As set forth above, on or about December 21, 2015, Plaintiffs' money held in Mr. Lau and Lau and Associates attorney trust account was released to YSF Holdings.

31

170.    YSF Holdings and A. Wong benefitted from the receipt of Plaintiffs' money by using those funds to purchase the 77th Street Property. YSF Holdings and A. Wong have accordingly been unjustly enriched.

171.    A constructive trust is an equitable remedy, and may be imposed when, as here, property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest. See *Quadrozzi v Estate of Quadrozzi*, 99 AD3d 688, 691 (2d Dept 2012).

172.    Wherefore, Plaintiffs seek declaratory relief in the form of an order and judgment declaring that Plaintiffs are the lawful owners of the 77th Street Property.

## SEVENTH CAUSE OF ACTION

### (Breach of Contract Against A. Wong, and Fok by Plaintiff J. Zhang)

173.    Plaintiffs reallege and incorporate by reference each and every allegation set forth above, as though fully set forth herein.

174.    As set forth above, on or about December 1, 2015, the Zhang YSF Holdings Operating Agreement was executed.

175.    Pursuant to the terms of the Zhang YSF Holdings Operating Agreement, "the net profits and the net losses for each fiscal year **shall** be allocated to each member in accordance with the ratio of the value of his, her, or its capital account to the value of all capital accounts in aggregate" (emphasis added).

176.    Upon information and belief, YSF Holdings, A. Wong, and Fok have been distributing YSF Holdings profits amongst themselves without distributing J. Zhang's

proportionate allocation to him pursuant to the terms of the terms of the Zhang YSF Holdings

Operating Agreement, constituting a breach of contract.

177.    Wherefore, Plaintiff J. Zhang request that this Court enter judgment against

Defendants A. Wong, and Fok as follows: actual damages in an amount to be determined at trial

but in any event not less than $250,000.00, attorney's fees, and whatever other relief the Court

may find just and proper.


## EIGHTH CAUSE OF ACTION

### (Breach of Fiduciary Duty Against A. Wong and Fok by Plaintiff J. Zhang)


178.    Plaintiffs reallege and incorporate by reference each and every allegation set forth

above, as though fully set forth herein.

179.    As set forth above, in or around November 2015, Plaintiff J. Zhang transferred

$250,000 to YSF Holdings in order to obtain a membership interest in YSF Holdings.

180.    As set forth above, on or about December 1, 2015, Plaintiff J. Zhang entered into

the Zhang YSF Holdings Operating Agreement.

181.    Pursuant to the terms of the Zhang YSF Holdings Operating Agreement,

Defendants A. Wong and Fok were appointed as the managers of YSF Holdings.

182.    As managers of YSF Holdings, and as majority members of YSF Holdings,

Defendants A. Wong and Fok owed fiduciary duties to Plaintiff J. Zhang, a minority member of

YSF Holdings.

183.    Defendants A. Wong and Fok breached these fiduciary duties as a result of their

willful misconduct, including but not limited to, executing numerous operating agreements

representing that J. Zhang is not a member of YSF Holdings, executing an agreement encumbering 100% of the membership interests in YSF Holdings to secure a $900,000 loan without the knowledge or consent of J. Zhang, assigning 100% of the membership interests in YSF Holdings to M. Wong, without the knowledge or consent of J. Zhang, and making distributions to every member of YSF Holdings other than Plaintiff J. Zhang.

184.    Wherefore, Plaintiff J. Zhang request that this Court enter judgment against Defendants YSF Holdings, A. Wong, and Fok as follows: actual damages in an amount to be determined at trial but in any event not less than $250,000.00 with interest from November 2015, attorney's fees, and whatever other relief the Court may find just and proper.

## NINTH CAUSE OF ACTION

**(Accounting Against A. Wong, Fok, M. Wong and YSF Holdings by Plaintiff J. Zhang)**

185.    Plaintiffs reallege and incorporate by reference each and every allegation set forth above, as though fully set forth herein.

186.    Defendants A. Wong, Fok, and M. Wong (as the current/former managing members of YSF Holdings) owe Plaintiff J. Zhang a fiduciary duty or other trust-based duty with respect to the business and affairs of YSF Holdings.

187.    As a result of these trust-based relationships, Plaintiff J. Zhang is entitled to an accounting with respect to YSF Holdings.

188.    Plaintiff J. Zhang has previously demanded such an accounting.

189.    Defendants A. Wong, Fok, and M. Wong have failed and/or refused to provide such an accounting.

190.    Upon information and belief, Defendants A. Wong, Fok, and M. Wong have failed and/or refused to provide such accounting so as to conceal Defendants' wrongful acts in derogation of Plaintiff J. Zhang's rights.

191.    An accounting is necessary to determine Plaintiff J. Zhang's monetary damages and/or in order to determine the true and full information about the financial affairs of YSF Holdings.

192.    The accounting is applicable to YSF Holdings for each annual year (or partial period) of its operation and its management by Defendants A. Wong, Fok, and M. Wong.

**WHEREFORE,** the Plaintiffs respectfully requests that the Court enter judgment against Defendants:

(1) For the first cause of action (RICO Claims against All Defendants by all Plaintiffs), granting judgment in favor of Plaintiffs and against all Defendants, awarding Plaintiffs compensatory damages in an amount to be determined at trial, but in any event not less than $1,250,000.00, punitive damages in an amount to be determined at trial, treble damages under the Racketeer Influenced and Corrupt Organizations Act, along with pre-judgment interest from December 21, 2015;

(2)  For the second cause of action (Fraud against A. Wong and the Wong Consultancy by all Plaintiffs), granting judgment in favor of Plaintiffs and against Defendants A. Wong and the Wong Consultancy, awarding Plaintiffs compensatory damages in an amount to be determined at trial, but in any event not less than $1,0000,000.00, punitive damages in an amount to be determined at trial, together with pre-judgment interest from December 21, 2015;

(3) For the third cause of action (Aiding and Abetting Fraud against Chan , M. Wong, Fok, and YSF Holdings by All Plaintiffs), granting judgment in favor of Plaintiffs and against Defendants M. Wong, Chan, Fok and YSF Holdings, awarding Plaintiffs compensatory damages in an amount to be determined at trial, but in any event not less than $1,0000,000.00, punitive damages in an amount to be determined at trial, together with pre-judgment interest from December 21, 2015;

(4) For the fourth cause of action (Unjust Enrichment against YSF Holdings by All Plaintiffs), granting judgment in favor of Plaintiffs and against YSF Holdings, awarding Plaintiffs compensatory damages in an amount to be determined at trial, but in any event not less than $1,0000,000.00, together with pre-judgment interest from December 21, 2015;

(5) For the fifth cause of action (Monies Had and Received against YSF Holdings by All Plaintiffs), granting judgment in favor of Plaintiffs and against YSF Holdings, awarding Plaintiffs compensatory damages in an amount to be determined at trial, but in any event not less than $1,0000,000.00, together with pre-judgment interest from December 21, 2015;

(6) For the sixth cause of action (Constructive Trust as to Defendants A. Wong, the Wong Consultancy and YSF Holdings by All Plaintiffs), granting declaratory relief in the form of an order and judgment declaring that Plaintiffs are the lawful owners of the 77th Street Property;

(7) For the seventh cause of action (Breach of Contract Against A. Wong, and Fok by Plaintiff J. Zhang), granting judgment in favor of Plaintiff J. Zhang and against Defendants A. Wong and Fok, awarding Plaintiff J. Zhang compensatory damages in an amount to be determined at trial, but in any event not less than $250,000.00, punitive damages in an amount to be determined at trial, together with pre-judgment interest from December 1, 2015;

(8) For the eighth cause of action, (Breach of Fiduciary Duty Against A. Wong and Fok by Plaintiff J. Zhang) granting judgment in favor of Plaintiff J. Zhang and against Defendants A. Wong, Fok, and YSF Holdings, awarding Plaintiff J. Zhang compensatory damages in an amount to be determined at trial, but in any event not less than $250,000.00, together with pre-judgment interest from November 17, 2015;

(9) For the ninth cause of action (Accounting Against A. Wong, Fok YSF Holdings, and M. Wong by Plaintiff J. Zhang), ordering an accounting by Defendants A. Wong, Fok, and M. Wong for YSF Holdings.

(10) Granting Plaintiffs cost, expenses, and reasonable legal fees under such provisions of law, including without limitation, the Racketeer Influenced and Corrupt Organizations Act, and

(11) Granting such other and further relief as the Court may be just and proper.

Dated: November 24, 2021
     Glen Cove, NY

                                      Xue & Associates, P.C.
                                      *Attorneys for Plaintiffs*

                    By:    <u>/s/ Benjamin B. Xue</u>
                                      Benjamin B. Xue, Esq.
                                      Michael S. Romero, Esq.
                                      1 School Street, Suite 303A
                                      Glen Cove, NY 11542
                                      Tel.: (516) 595-8887
                                      Email: BenjaminXue@XueLaw.Com
                                      Email: MRomero@XueLaw.Com